## METCALF v. PITTSBURGH ATHLETIC CO.

### No. 336.

District Court, W. D. Pennsylvania.

Jan. 16, 1941.

Patterson, Crawford, Arensberg & Dunn, of Pittsburgh, Pa., for plaintiff.

John M. Reed, of Pittsburgh, Pa., for defendant.

GIBSON, District Judge.

After verdict for the plaintiff, defendant has moved for judgment in its favor upon a motion for binding instructions presented at trial and reserved by the court. It has also filed a motion for a new trial.

The plaintiff, with a friend, had witnessed a ball game on August 13, 1939, from the grandstand of the defendant Company. His seat was in the second tier, and just before the end of the game he and his friend started, with a number of other spectators, to leave the stand. They passed over the ramp from the second tier to the flat on top of the first tier, and then engaged the 15% ramp leading to the ground floor. While on this ramp the right foot of plaintiff slipped, plaintiff states, his left leg collapsed and he ended in a sitting position upon the sole of his left foot. His left knee was seriously fractured. He alleges that the accident resulted from the negligence of the defendant in failing to maintain the ramp in a safe condition. He asserts, and also his friend, that the ramp, beneath the railing at the side, disclosed a roughened surface at the time of the accident, but that the middle part was quite smooth, although still showing traces of the original float finish. Such a smooth condition in a ramp of 15% grade is dangerous, he has claimed, and likely to lead to just such accidents as he suffered.

The defendant denied the negligence, maintaining that the ramp was entirely safe to all reasonably careful persons, and, were it otherwise, that plaintiff was guilty of contributory negligence, as he had gone up the ramp to his seat and knew its condition, and voluntarily walked upon the middle part of it instead of using the side rail or the elevator to the ground floor.

In connection with the plaintiff's testimony, several photographs were offered in evidence to show the ramp in question. At the same time the photographs were taken, a rubber mold was made of certain parts of the ramp, and later reproduced in plaster to show the condition of the surface. Objection was made to these when offered in evidence, on the ground that the surface of the ramp was not the same when the molds were made as at the time of the accident. When the casts were offered counsel for the plaintiff proposed to prove that the ramp had been re-roughened after the accident. She disclaimed offering this testimony as tending to establish negligence on the part of defendant, but stated that it was only in support of the testimony of plaintiff, the photographs having shown the roughened surface and apparently contradicted the testimony of the plaintiff that the middle of the ramp was quite smooth. When the court admitted the casts and testimony of change, it cautioned the jury that it was not to infer negligence from the change in the ramp. The location of the places on the ramp from which the molds were made was indicated upon the photographs. One cast was made from that part to which plaintiff pointed as the place of his fall, and another was from the part under the rail which showed the original float marking. These casts were later used in connection with the testimony of several witnesses called by plaintiff. These witnesses were experienced in the construction of ramps, and were called to establish as a fact that the maintenance of a 15% concrete ramp in

such a smooth condition as that alleged by plaintiff was hazardous. In testifying these witnesses had their attention called to parts of the casts which showed unroughened parts of the ramp, and applied their testimony to those parts. They testified that a 15% grade concrete ramp was in common use and within legal limits, but to render them safe they should not be allowed to become smooth.

None of these witnesses saw the ramp prior to the re-roughening.

The court, after some doubt it must be confessed, is of opinion that the case was one for submission to the jury, and that no vital error was made in the admission of testimony. It will therefore deny both defendant's motion for judgment upon the reserved point, and its motion for a new trial.